Estate of Moses L. Parshelsky, Deceased, Lawrence A. Baker, Clarence G. Bachrach, Isadore Schwartz and Abraham Parshelsky, Executors v. Commissioner.
Estate of Parshelsky v. Commissioner
Docket No. 70212.
United States Tax Court
T.C. Memo 1963-187; 1963 Tax Ct. Memo LEXIS 157; 22 T.C.M. (CCH) 911; T.C.M. (RIA) 63187; July 10, 1963
Lawrence A. Baker, 40 Wall St., New York, N. Y., for the petitioners. Edward Hance, for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: This case is before us on mandate from the United States Court of Appeals for the Second Circuit issued pursuant to that Court's opinion in Parshelsky's Estate v. Commissioner, 303 F. 2d 14 (1962). The appellate court reversed the Tax Court in Estate of Moses L. Parshelsky, 34 T.C. 946 (1960) with the comment (p. 15) that the Tax Court's inquiry into business purpose was too narrow since it evaluated only those reasons for the spin-off *158 which benefited the corporation and ignored any valid shareholder non-tax-avoidance reasons which might be present. The facts constituting the "spin-off" were stated by the Court of Appeals as follows (p. 16): * * * Parshelsky caused a new corporation, Parshelsky Realties, Inc. (Realties), to be organized late in 1953. On January 4, 1954, Parshelsky Brothers transferred the real estate to Realties in exchange for all of the latter's capital stock which was immediately distributed to Parshelsky, the sole shareholder of Parshelsky Brothers. Simultaneously with the carrying out of this exchange, Realties leased the real estate back to Parshelsky Brothers for five years at an annual rental of $42,000 with an option to renew for an additional five years. The lease gave Parshelsky Brothers, the lessee, the right to sublease for its own account up to 50% of the floor space. The case was remanded to us for an "examination of the shareholders' reasons and the evaluation of their validity" (p. 21). Findings of Fact Pursuant to the mandate of the appellate court, we have reviewed the record and find facts, in addition to those found in our original opinion which are incorporated herein *159 by reference, as follows: Moses L. Parshelsky, hereinafter referred to as decedent, and Schwartz were the directors of Parshelsky Brothers, Inc., hereinafter referred to as Brothers. Along with decedent, the organizers and directors of Parshelsky Realties, Inc., hereinafter referred to as Realties, were Baker and Bachrach, who were also named as two of the executors in decedent's will and were two of the trustees of his charitable foundation. The resolution of the directors of Brothers adopted December 18, 1953 provided in part, in addition to the matters previously found, as follows: WHEREAS, for the purpose of carrying out such plan of reorganization, a new corporation, qualified to own and manage such real estate, has been incorporated under the laws of the State of New York, namely Parshelsky Realties, Inc., and said Parshelsky Realties, Inc. is willing to accept a conveyance of said real estate and to issue to this corporation the entire capital stock of said Parshelsky Realties, Inc., consisting of 100 shares of common stock, all of one class, having a par value of $100. per share, in exchange for the conveyance to said Parshelsky Realties, Inc. of this corporation's said *160 real estate; and said Parshelsky Realties, Inc. is also willing to enter into a lease of said real estate to this corporation upon such terms and conditions as this corporation shall deem appropriate and reasonable; and WHEREAS such reorganization is desired by Moses L. Parshelsky, the sole stockholder of this corporation; During the Korean War, inventory was difficult to procure and the unit volume of sales of Brothers declined while costs increased. Because of inflation, gross sales and inventory in terms of dollar volume did not significantly decline. Due to these factors net income declined markedly. By the end of the Korean conflict, Brothers' warehouse was 40% empty, and decedent engaged in some discussions relevant to renting space to outsiders. For the calendar year ending December 31, 1954, decedent had an adjusted gross income, including substantial income from investments, of $129,684.09 consisting of: dividends - $11,911.50; interest - $86,074.41; capital gains - $8,462.43; and annuities - $14,980.00. His contributions to charity during the year 1954 were $48,394.05, which was substantially in excess of the amount that he was permitted to deduct on his income tax *161 return. He had income adequate for his personal needs without dividends from Brothers and his intention, with respect to the stocks that he owned and the residue of his estate, was that such assets would go to his charitable foundation. Decedent wanted the real estate left so that it would be readily available to his executors as a separate asset for the ultimate benefit of his previously-created charitable foundation. Decedent's action in removing the real estate from Brothers was intended to and did put Schwartz and other employees on notice that if they continued the occupancy of the premises they would be required to meet the rental obligations of such lease. Meanwhile, Realties, under the direction of decedent, Baker, and Bachrach, had taken over from Brothers all power to control and manage the property covered by the lease. Decedent wanted to be in the position where he or his successors could make a move with respect to the operating business, which was growing less profitable, that would not interfere with continued ownership of the real estate property. During the period that decedent was contemplating transfer of the real estate from Brothers to Realties (October-December *162 1953), there was no discussion with respect to the possible tax consequences that might result from such transfer. Nor was there any discussion with respect to avoiding tax on account of unreasonable accumulation of surplus under section 102 of the 1939 Code. Decedent's will dated March 14, 1951 authorized and emplowered his executors to sell the stock in trade, fixtures, and equipment of Brothers to certain named employees of Brothers under favorable terms and to give them customer lists if they remained in the same general type of business. This was intended to benefit directly or indirectly all of the employees of Brothers. By a separate provision of decedent's will, which was executed prior to the "spin-off," the executors were authorized and emplowered, "through their control of the corporation or otherwise," to lease part or all of the real estate under favorable terms to the same employees should they desire to use it to engage in business or to sell the entire property to the same employees under favorable terms. The executors were also authorized and empowered to convey in kind out of decedent's residuary estate, to his charitable foundation, any real or personal property *163 which was part of his estate without first reducing it to cash. Some of the expenses claimed by Brothers in connection with the real estate for the fiscal year ended January 31, 1954 were as follows: Real estate taxes
$4,868.11
Depreciation
3,126.02
The accumulated earned surplus of Brothers was reduced by $108,407.89 as a result of the "spin-off." Organization of Realties, the transfer thereto of the real estate formerly owned by Brothers, and distribution to decedent of Realties' stock served a legitimate personal business purpose of decedent connected with the administration, conservation, and ultimate disposition of his estate. Decedent had non-tax-avoidance reasons for the "spin-off" reorganization. Opinion Our problem here is a limited one. The law of the case is established and we are directed to make a factual determination within the narrow framework of the mandate. The Court of Appeals has made it clear that the reason that Parshelsky wanted the real estate to be readily available to his executors as a separate asset of his estate has more weight. * * * To the extent that Parshelsky wanted the real estate and operating business to go to different *164 legatees, his aim appears to be within the legislative purpose of the spin-off provision. [Footnote omitted.] In order to carry out this non-tax-avoidance purpose the ownership of the real estate and operating assets would have to be separated at the shareholder level. Parshelsky's Estate v. Commissioner, supra, p. 21; Italics added. We agree with petitioner that the Court of Appeals did not use the word "legatee" in [a] technical sense, but intended it to include any person who would benefit or receive property under the decedent's estate plan. * * * [The] beneficiaries of tangible personal property of Brothers included Schwartz, Rosenblum and indirectly other employees of Brothers. * * * The stock of Realties [was] controlled by independent directors and executors * * *. This interpretation appears to agree with that of the respondent. His counsel stated that the opinion of the Court of Appeals "[indicates] that * * * one of [the reasons for the spin-off] has * * * merit * * * - the contention that the stockholder wished his assets, that is, the real property here to go to someone different than the other assets of the business, and that was his *165 non-tax-avoidance purpose." [1]
In our original opinion we found - and, of course, now reiterate - that decedent (Parshelsky) "wanted the real estate left so that it would be readily available to his executors as a separate asset of the estate." (Italics added.) We also found that "[he] intended to make, and did make, provision in his will for some of the employees to continue the business after his death under very favorable conditions." Our supplemental findings amplify this statement. We have accordingly disposed of the primary issue by our ultimate finding of fact in petitioner's favor. A minor collateral detail remains for disposition. In our original opinion, we said: * * * The new corporation, Realties, was not intended to engage in the active conduct of any separate related business such as in the example [footnote omitted] given in the Commissioner's regulations. This was apparently subject to misinterpretation and was read by the *166 Court of Appeals as an indirect reference to the provisions of the 1954 Code (section 355). Cf. Bonsall v. Commissioner, 317 F. 2d 61 (C.A. 2, 1963), affirming a Memorandum Opinion of this Court. What was intended was not an affirmative but a negative statement. Since respondent's regulations under the 1939 Code [2] give an example of a state of facts (a parking lot operated separately from an adjacent department store) which would be entitled to nonrecognition treatment, it was considered advisable to distinguish the facts as found from that example. To the extent required to comply with the views of the Court of Appeals that "finding" is reconsidered and if necessary deleted. To give effect to the agreement of the parties relating to a claimed overpayment, Decision will be entered under Rule 50. Footnotes
1. He was asked: THE COURT: * * * [Suppose] that that were found to be the purpose. Would you say that was a non-taxable purpose? [COUNSEL FOR RESPONDENT]: If that were clearly established that that was the purpose * * *.↩
2. Sec. 29.112(b)(11)-2, Regs. 111, as amended by T.D. 5990, 1953-1 C.B. 142↩, 144.