[No. 16089. Department Two. December 3, 1920.]

JACOBUS L. HALFFMAN, *Respondent,* v. WILLIAM HALFFMAN, *Individually and as Executor, etc., Appellant.*[1]

HUSBAND AND WIFE (48, 58, 64)—COMMUNITY PROPERTY—ACQUIRED DURING MARRIAGE — PRESUMPTION — EVIDENCE — SUFFICIENCY. Real estate acquired after marriage is sufficiently shown to have been community property, notwithstanding a quitclaim deed from the husband to the wife, where subsequent to such deed, in a divorce action, it was admitted to be community property, and quitclaims had been executed by each to the other to be used by the survivor on the death of either, and there was no evidence that the property was acquired by the separate funds of the wife.

WITNESSES (52) — PRIVILEGED COMMUNICATIONS — ATTORNEY AND CLIENT—ACTING FOR BOTH PARTIES. Statements to an attorney are not privileged in a subsequent suit between a husband and wife where he advised and was acting as attorney for both parties, as to their rights on making mutual deeds.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered March 27, 1920, upon

[1]Reported in 194 Pac. 371.

findings in favor of the plaintiff, in an action to quiet title, tried to the court. Affirmed.

*James Kiefer,* for appellant.

*William J. Steinert,* for respondent.

MOUNT, J.—This action was brought to quiet title to an undivided one-half interest in lot 26, block 19, Madison Street Addition to Seattle. The case was tried to the court without a jury, and resulted in a judgment to the effect that the plaintiff is the owner of an undivided one-half interest in the property which is subject to administration of the estate of Elizabeth Halffman, deceased. The defendant has appealed from that judgment.

The facts are, in substance, as follows: The respondent is the father of William Halffman. Elizabeth Halffman, during her lifetime, was the wife of the respondent. The respondent and Elizabeth Halffman were married in Belgium in October, 1889. They came to Seattle in this state in the year 1907. In the year 1910 respondent and his wife entered into a contract with William Allen and wife by which respondent and wife agreed to purchase the property by partial payments. It appears that the respondent was a marine engineer, and most of his time was spent upon the high seas away from his family. At the time the contract was entered into, the respondent and wife each executed quitclaim deeds from one to the other. These quitclaim deeds were left with the wife and were kept in a safe deposit vault. In March of 1915, the payments upon the contract were completed and a deed to the property was delivered by Allen and wife to respondent and wife. Thereafter, in January of 1918, the respondent brought an action against his wife for divorce, in which action he alleged that the

property was community property of himself and wife and was of the value of $2,500. . His wife, in answer to the complaint in that case, admitted that the property was community property and alleged that it was worth only $1,500. After the issues were made up in the divorce case, it appears to have been dismissed without any decree. While the divorce case was pending, Mrs. Halffman filed for record in the county auditor's office of King county the quitclaim deed which had been executed by the respondent in 1910. In December of 1918 Mrs. Halffman was adjudged insane. On January 30, 1919, she died, leaving a will by which she bequeathed the property in question to her son William Halffman, the appellant herein, who was also named as executor in the will and who claims all of the property in question.

The respondent's testimony used on the trial of this case was taken by deposition. The court, over objection of the appellant, permitted counsel for the respondent to read in evidence the following interrogatories:

"Int. 5. State whether or not either you or the said Elizabeth Halffman owned or had any separate property at the time of your marriage, and, if so, what and how much? Ans. My wife had no separate property or money of any kind at the time of our marriage. I had nothing but my salary."

"Int. 8. State whether or not on or about March 29, 1910, you acknowledged a certain quit-claim deed purporting to convey the above mentioned real estate to Elizabeth Halffman and whether or not you are the J. Halffman and Jacobus L. Halffman mentioned therein? Ans. Yes, about March 29, 1910, I acknowledged a quit-claim deed to my wife Elizabeth Halffman in the office of attorney Von Tobel and in his presence and in the presence of Judge Humphries.

"Q. State when you first learned that the above

quit-claim deed from yourself to Elizabeth Halffman had been recorded? Ans. I first learned that the above quit-claim deed from myself to my wife Elizabeth Halffman had been recorded when my attorney Mr. William J. Steinert informed me of the fact on the first day of February, 1919.

"Q. State when you first learned that said Elizabeth Halffman claimed said real estate as her own separate property. Ans. I definitely learned it in February, 1919."

The appellant argues that the court erred in permitting these questions to be answered and read in evidence, for the reason that they in effect call for transactions between the respondent and his deceased wife. It is unnecessary to determine the question here presented because, if these questions and answers are stricken from the record as being incompetent, there is abundant testimony in the record to show that the property was community property of the respondent and his wife at the time of her death.

It is shown without dispute that the property was acquired by respondent and his wife after marriage. It was admitted to be community property in the divorce action. This court has held in numerous cases that where property is acquired after marriage, such property is prima facie community property. *Yesler v. Hochstettler*, 4 Wash. 349, 30 Pac. 398; *In re Mason's Estate*, 95 Wash. 564, 164 Pac. 205. There is no evidence in the record that the property was acquired by the separate funds of the wife. It follows, therefore, that the property was acquired as community property.

Appellant also argues that the court erred in overruling objections to the testimony of the witness Von Tobel, who testified as follows:

"Q. Do you recall at or about that time, March 29, 1910, acting as the scrivener for Mr. and Mrs. Halffman in the preparation of any legal instruments? A. Yes, I remember it. Q. State what? A. I prepared two deeds; one from Mr. Halffman to Mrs. Halffman, and one from Mrs. Halffman to Mr. Halffman to the same property that they were buying from Mr. Allen. Q. What was the character of the deed? A. Each deed conveyed to the other the property that they were buying from Mr. Allen."

The record shows that Mr. Von Tobel at that time was a practicing attorney, and appellant now contends that the statements of the parties to Mr. Von Tobel were privileged, and that it was error of the trial court to admit or consider the testimony of Mr. Von Tobel. A number of cases are relied upon by the appellant, but we think none of them are in point here. The one principally relied upon is *Hartness v. Brown,* 21 Wash. 655, 59 Pac. 491. That was a case where the attorneys who testified were acting as attorneys for one of the parties to the action and not for the other. We held in that case that the communication was privileged and could not be shown by a third party, and that decision we think was clearly right. The case at bar is one where Mr. Von Tobel advised both Mr. and Mrs. Halffman of their rights under the deeds, one of which was to be filed for record in case of death of the maker. He testified that he was simply acting as a scrivener. In a note to *Kirchner v. Smith,* 61 W. Va. 434, 58 S. E. 614, 11 Am. & Eng. Ann. Cas. 870, 877, it is said:

"The general rule is that communications made to an attorney acting for several clients jointly are not privileged in a subsequent controversy between the clients. In a suit between them or their personal representatives, any one of them may require the attorney to disclose such communications."

This rule appears to be abundantly supported by the authorities:

In *Rice v. Rice,* 14 B. Mon. (Ky.) 417, the court said:

"The controversy is between the parties themselves, and the attorney is under the same obligations to both of them. The matter communicated was not in its nature private, as between these parties, who were both present at the time, and consequently, so far as they are concerned, it cannot, in any sense be deemed the subject of a confidential communication made by one, which the duty of the attorney prohibited him from disclosing to the other. The reason of the rule has no application in such a case. The statements of parties made in the presence of each other may be proved by their attorneys as well as by other persons, because such statements are not in their nature confidential, and cannot be regarded as privileged communications."

And in *Hurlburt v. Hurlburt,* 128 N. Y. 420, 28 N. E. 651, 26 Am. St. 482, it was held that communications made to a common attorney may likewise be disclosed in a suit between the personal representatives of the parties. See, also, 40 Cyc. 2368. Conceding here that Mr. Von Tobel was the attorney for both the respondent and his wife, we think it is plain that the communications made by them at that time were not privileged, and that the attorney might be required to testify as to what occurred and what the agreement was. We are satisfied, therefore, that the trial court did not err in considering the testimony of Mr. Von Tobel upon the trial of this case.

No other error is claimed. We are satisfied the trial court properly found upon the evidence that the property in question was the community property of the respondent and his wife, and that the wife could not by will dispose of the husband's interest. The respondent, therefore, was entitled to an undivided one-

half thereof, subject to the administration of his wife's estate.

The judgment is affirmed.

HOLCOMB, C. J., MITCHELL, MAIN, and TOLMAN, JJ., concur.