[No. 28740.   Department Two.   January 6, 1943.]

VAN CUMMINGS, *Respondent,* v. RUTH ALLENBERG
SHERMAN, *as Executrix, et al., Appellants,*
FRANK P. SHINN *et al., Respondents.*[1]

[1]Reported in 132 P. (2d) 998.

*Joseph J. Lavin* and *Graves, Kizer & Graves,* for appellants.

*John B. White* and *T. T. Grant,* for respondents.

SIMPSON, J.—This action was instituted in the superior court of Spokane county, in which action respondent Cummings, as plaintiff, and respondents Shinn and Umbach, as cross-complainants, sought to obtain an interest in the estate of Phoebe Shinn, deceased. Recovery was predicated in the complaint and cross-complaint upon the allegations that Homer J. Shinn and Phoebe Shinn, husband and wife, had made

mutual, identical, and reciprocal wills, by the terms of which respondents were entitled to receive certain interests in the estate left by Mr. and Mrs. Shinn. The case tried to the court resulted in the entry of a decree awarding to respondents the interest claimed.

Appellants, in appealing from the decree, make many assignments of error, which will be discussed as we proceed.

The following facts are not in dispute: Homer J. Shinn and Phoebe Shinn were husband and wife for many years prior to April 30, 1931, at which time they executed mutual wills disposing of their community holdings, which consisted of real and personal property. The wills were alike in all essential details.

The will of Homer J. Shinn contained the following provisions:

"*Second:* At the time of the execution of this my last will, my wife, Phoebe Shinn, is executing a similar will in which she provides for payment of the same legacies as are herein set forth. Should my wife predecease me and thereby provide for the payment of these legacies, then and in that event such payment out of her estate shall be deemed a full payment and satisfaction of the above and foregoing legacies, and no payment of any such legacies shall be made hereunder.

"*Third:* In the event that my beloved wife, Phoebe Shinn, survives me, then and in that event I do give, devise and bequeath to my said wife, Phoebe Shinn, the whole of the residue and remainder of my estate, of whatever the same may consist, either real, personal or mixed, and wheresoever the same may be situate, with full and exclusive right of disposition of the same.

"*Fourth:* In the event my wife, Phoebe Shinn, does not survive me, then and in that event, her share of our community estate, by the terms of her will, subject only to the payment of debts, expenses and legacies, passes to me and I do give, devise and bequeath an undivided one-half of our estate remaining at the time of my death, of whatever the same may consist, either real, personal or mixed, and wheresoever the

same may be situate, unto my said trustee, Spokane and Eastern Trust Company, a corporation, of Spokane, Washington, to be held by it in trust for a period ending five (5) years from the date of my death, subject to the provisions of this will, for the following named persons, to-wit: for Ruth Allenberg Sherman; for Mary Page Sherman, daughter of Ruth Allenberg Sherman; and for Jack D. Allenberg; share and share alike.

"*Sixth:* Similarly, in the event my said wife fails to survive me and I thereby become the recipient, through her will, of the whole of our community estate, subject only to the payment of debts, expenses and legacies, then and in such event the remaining one-half of said estate in my hands and under my control at the time of my death not heretofore disposed of, I do give, devise and bequeath unto the Spokane and Eastern Trust Company, a corporation, of Spokane, Washington, to be by it held in trust on the terms hereinafter stated for the benefit of the following named persons, to-wit: to my nephew, Frank P. Shinn, an undivided one-half thereof; to my nephew, Van Cummings, an undivided one-fourth thereof; and to my faithful friend, Fred E. Umbach, an undivided one-fourth thereof.

"*Fourteenth:* My wife and I are each executing our wills at this time and these wills are substantially identical in their provisions. All of the property that we possess is community property, and each of us is agreed that the survivor is to have the whole of our said community property, save only for the legacies provided in Section First of this will, without restriction upon his, or her, disposition thereof during his, or her, lifetime, and the legacies herein provided to take effect upon my death shall include only such property as I may have at the time of my death."

The will of Phoebe Shinn made like provisions relative to her interest in the joint property, and that which she might acquire through the death of her husband.

Homer J. Shinn died July 9, 1931, and his will was admitted to probate July 16, 1931. Phoebe Shinn acted as executrix of the estate, which was closed March 27, 1936. The final decree recited that all legacies, costs,

taxes, and costs of administration had been paid, and then provided "that Phoebe Shinn is entitled to receive and there is disbursed to her the entire residue of said estate."

October 11, 1934, Phoebe Shinn executed another will revoking all her former wills. In this will, she did not mention respondents in any way. Mrs. Shinn died October 23, 1940, and her will of October 11, 1934, was admitted to probate October 25, 1940.

It is respondents' contention that Homer J. Shinn and Phoebe Shinn, in 1931, entered into an oral agreement to make mutual wills, which would include provisions whereby their property should be finally distributed so that respondents and certain relatives of Mrs. Shinn would receive portions of the community estate, and that, in compliance with the agreement, Mr. and Mrs. Shinn made their wills of April 30, 1931. Further, that Phoebe Shinn took her husband's estate subject to the provision that, after her death, the devisees named in his will, respondents here, should receive the portion of his estate mentioned in paragraph six of his will.

A comprehensive discussion of this subject was recently made by this court in *Allen v. Dillard*, 15 Wn. (2d) 35, 129 P. (2d) 813. In that case, it was stated:

"Contracts to make mutual wills are recognized under our law as valid and, when sufficient facts are proven by competent evidence, such contracts may be specifically enforced. *Prince v. Prince*, 64 Wash. 552, 117 Pac. 255; *In re Fischer's Estate*, 196 Wash. 41, 81 P. (2d) 836. In principle, such contracts bear great similarity to agreements to devise or bequeath property in return for services to be rendered to the testator, or for some similar consideration moving to him. If there has been no attempted revocation by either party during the lifetime of both, a matter which will be discussed later, courts generally will enforce such con-

tracts, if a valid agreement is proven; and it is the general rule that a party or a beneficiary to such a contract may maintain a suit for specific performance or some other appropriate relief. Because, however, of the great opportunity for fraud, and because of reluctance on the part of courts to render ineffective a subsequent will of a testator, the contract to make mutual wills must be established by clear and convincing evidence."

Accord: *McCullough v. McCullough,* 153 Wash. 625, 280 Pac. 70.

The question first to be decided is whether or not the testimony introduced in this case was sufficient to prove the making of the oral contract, under the rule to which we have just referred.

The proof of the oral agreement was supplied by Fred J. Cunningham, a member of the Spokane bar. Mr. Cunningham stated that he drew the wills in 1931, at the request of Mr. and Mrs. Shinn. His testimony relative to the oral agreement is as follows:

"Q. Now, the first time that they consulted you together, state what the conversation was, if any was had between you and them, when they were both there, in regard to executing wills, or whatever the nature of it was? THE WITNESS: They came in by appointment, and Mr. Shinn stated that they had now reached an agreement as to making wills, or the substance of that statement, and he asked that I explain to Mrs. Shinn the difference between mutual wills and individual wills, which I attempted to do. BY MR. GRANT: Q. State what you said to them in response to that question. A. As I recall, I stated that if they wanted to deal with their own share, each one's own share of the community property, they could make individual wills which could be changed at any time they wanted to, up until their death. If they wanted to deal with their community property by some agreement between them as to the character of their wills, and they entered into such wills, then when one of the parties died and that will was probated, their rights

became fixed and the survivor could not change the will, at his option, in any way to violate their agreement. Then, as I recall, I asked Mr. Shinn what the substance of their agreement was as to their wills, and he said that they wanted to make identical wills in which each one would make the other the executor or the executrix, as the case might be, and that they wanted these wills to cover their entire community property. They stated that they wanted to give some cash bequests in each of these wills, and that if these bequests—I will put it this way—that these bequests should be paid at the time of the death of the first one, and that payment at that time should not be repeated at the time of the death of the second.

"They stated briefly, that they wanted to give cash bequests of $30,000 to his relatives, and $40,000 to hers, and that after those bequests were paid, that the property should go to the other party, whichever was the survivor, with the right to use that property in any way they saw fit during their lifetime, and that any residue left should be willed or divided between the parties, and each one's share should go to each ones named. Then I asked her if she had talked this over with him, and if that was her understanding, in general, of this arrangement for the disposal of their property, and she said it was.

"Then he produced a roll of papers, documents, most of which I had seen before. They were typewritten copies of a draft of a will or wills, and there were a number of pencil notations and different writings that apparently he had made, and some other notes that I had given to him at different times in our conversation before. I asked her if she was familiar with these, and she said, 'Well, I think I am with most of them. We have talked this over enough,' or some expression of that kind.

"Then I went over those briefly, and I took up first— he had made a list of these cash bequests and names and the amount of money stated after each, and I just read them briefly, and asked them if that was their understanding, and they both said it was."

In speaking of the 1931 will, Mr. Cunningham testified further:

"In one of these sections of this draft there was some provision to the effect that they might each make wills—that the survivor might make wills, or something like that, but in making these wills, or in making a will they would have to observe the provisions or the spirit of this will, and he had pencil marks through that, and I asked him about that, and he said, 'Well, now, we hope this is a final arrangement as to our property, and I don't want any suggestion that if I live the longest that I will make any will changing our property arrangement here, and if I should die first, I don't want my wife to feel, or to be encouraged to make such a will.'

"I remember at that time that Mrs. Shinn stated that, 'Well, we have been worrying over this—' I can't remember her language, but it was to this effect, that 'we have been worrying over this for several months, and I don't want—I think that we should have it settled, and these arrangements—that is satisfactory with me. I don't want to make any more wills, or I don't expect to change my will when I make it,' or words to that effect."

Appellants argue that the trial court was in error in allowing Mr. Cunningham to testify concerning the statements made by Mr. and Mrs. Shinn for the reason that the conversations were prohibited under Rem. Rev. Stat., § 1214 [P. C. § 7725], which reads:

"The following persons shall not be examined as witnesses: —

"2. An attorney or counselor shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment."

They also cite many authorities supporting this statute, which is common to most jurisdictions. There are, however, many situations in which the statute does

not and cannot apply. The general rule is stated in 28 R. C. L. 566, § 156, as follows:

"When two or more clients employ the same attorney in the same matter, communications made by them in relation thereto are not privileged inter sese. By selecting the same attorney, each party waives his right to place those communications under the shield of professional confidence. The reason assigned for the rule is that, as between the clients, communications made for the mutual benefit of all, lack the element of confidentiality which is the basis of privileged communications. Ordinarily the attorney for both parties is not the depositary of confidential communications from either party which ought to be withheld from the other. And this is usually the case even though the parties have adverse interests. Sometimes, however, communications made to a common attorney are not intended to be disclosed to the adverse party. Such communications are accordingly held to be privileged. Thus it has been held that where a person went to his regularly retained attorney, who was also the attorney for the other party to a controversy, and in the absence of the other party made statements which were apparently confidential, the attorney should not be permitted to disclose that communication in an action between the parties. The general rule now under consideration is, of course, of particular weight as to communications made while all clients are present. Thus, if two or more persons consult an attorney at law for their mutual benefit, and make statements in his presence, he may disclose those statements in any controversy between them or their personal representatives or successors in interest."

70 C. J. 438, § 587, says:

"It is generally considered that the rule of privilege does not apply in litigation, after the client's death, between parties, all of whom claim under the client; and, so, where the controversy is to determine who shall take by succession the property of a deceased person and both parties claim under him, neither can set up a claim of privilege against the other as regards the communications of deceased with his attorney."

This court has adopted a like rule in the cases of *Maxwell v. Harper*, 51 Wash. 351, 98 Pac. 756; *In re Beck's Estate*, 79 Wash. 331, 140 Pac. 340; *Halffman v. Halffman*, 113 Wash. 320, 194 Pac. 371; *Parker v. Parker*, 121 Wash. 24, 207 Pac. 1062; and *Billias v. Panageotou*, 193 Wash. 523, 76 P. (2d) 987.

At the trial in the *Halffman* case, an attorney was allowed to testify concerning advice he had given to a man and wife relative to their legal rights and to what they stated at that time. In passing upon that question, we quoted with approval from *Rice v. Rice*, 14 B. Mon. (Ky.) 417, as follows:

" 'The controversy is between the parties themselves, and the attorney is under the same obligations to both of them. The matter communicated was not in its nature private, as between these parties, who were both present at the time, and consequently, so far as they are concerned, it cannot, in any sense be deemed the subject of a confidential communication made by one, which the duty of the attorney prohibited him from disclosing to the other. The reason of the rule has no application in such a case. The statements of parties made in the presence of each other may be proved by their attorneys as well as by other persons, because such statements are not in their nature confidential, and cannot be regarded as privileged communications.' "

and then stated:

"And in *Hurlburt v. Hurlburt*, 128 N. Y. 420, 28 N. E. 651, 26 Am. St. 482, it was held that communications made to a common attorney may likewise be disclosed in a suit between the personal representatives of the parties. See, also, 40 Cyc. 2368. Conceding here that Mr. Von Tobel was the attorney for both the respondent and his wife, we think it is plain that the communications made by them at that time were not privileged, and that the attorney might be required to testify as to what occurred and what the agreement was."

This decision was followed in the last two cases cited.

In the present case, the statements concerning which Mr. Cunningham testified were made when both Mr. and Mrs. Shinn were present. The statements of the attorney, which brought forth the ideas of the makers of the wills, were given them in the presence of both. That advice, given to them collectively, concerned their community property rights and their obligations should they make mutual wills. The court did not err in admitting the testimony of Mr. Cunningham.

The next objection urged by appellants is that the facts and circumstances, surrounding the making of prior wills by the Shinns, demonstrated that they did not intend to make mutual wills in 1931. In support of this contention, counsel bring to our attention the following excerpts from wills made by Mr. and Mrs. Shinn in 1929:

"*Fifteenth.* My wife and I are each executing our wills at this time, and these wills are substantially identical in their provisions. All of the property that we possess is community property, and each of us is agreed that the survivor is to have the whole of our said community property, save only for the legacies provided in paragraph 'First' hereof, without restriction upon his, or her, disposition thereof during his, or her lifetime, save and except only that while each of us retains the unrestricted right to alter his or her will at any time prior to death, we agree that the survivor, in making such alterations, will give effect to the purpose and intent of us both that the community one half of the husband, as it may be diminished or expanded during the life of the survivor, shall descend to his relatives named herein and the like one-half of the wife shall descend to her relatives named herein."

"*Third.* In the event that my beloved wife, Phoebe Shinn, survives me, then and in that event I do give, devise and bequeath to my said wife, Phoebe Shinn, the whole of the residue and remainder of my estate,

of whatever the same may consist, either real, personal or mixed, and wheresoever the same may be situate."

From the difference in the provisions of the 1929 and 1931 wills, it is argued that the 1929 wills were mutual and identical as shown by their contents and that, having used different language in the 1931 wills, it must be assumed that the 1931 wills did not express an intention on the part of the testators to make mutual identical wills. We are unable to agree with this reasoning. The manifest intent in all of the wills was to see to it that each spouse should have his or her chosen individuals receive certain interests in the community property, after the death of the makers of the wills.

Appellants next urge that the decree in the Homer J. Shinn estate forecloses the claims now made. They argue that the decree is an adjudication that Phoebe Shinn took the entire estate without restriction, and that it cannot be contended she took a mere life estate with the right to use it during her lifetime. In their argument, they refer to the contents of the final report, notice of settlement of the estate, and decree of distribution filed by Mrs. Shinn in the Homer J. Shinn estate. The portions of the report, notice, and decree upon which appellants base their argument are as follows:

Report:

"Your petitioner [Phoebe Shinn] further shows that the only persons entitled to take under the will of said Homer J. Shinn, or at all, are the following named persons who were given specific legacies by the said will in the following amounts:

"Van Cummings                  $10,000.00
"Frank P. Shinn                    10,000.00

"That after the payment of said specific legacies the said will bequeathed the whole of the residue and remainder of the decedent's estate to your petitioner, Phoebe Shinn.

"Your petitioner further reports that she has paid the Federal and State inheritance taxes payable in respect of said estate and presents herewith receipts showing such payment.

"Your petitioner further shows that she is entitled to receive the entire residue of said estate and that the said estate is ready to be closed.

"WHEREFORE, your petitioner prays that the court will appoint a day for the hearing upon this petition; that upon the day fixed this court will enter its decree finding and adjudging that all debts have been paid; that all legacies given by the said will have been paid or released, and that your petitioner is entitled to receive the entire residue of said estate, and enter its decree distributing to your petitioner the said residue."

In passing it should be noted that the bequests made to Van Cummings and Frank P. Shinn, mentioned in the report, refer to special bequests named in the first section of Mr. Shinn's will and have no relation to the interest in the estate sought to be obtained in this action.

### Notice:

"Notice is hereby given that Phoebe Shinn, the executrix of the estate of Homer J. Shinn, deceased, has rendered . . . and filed . . . her final account as such executrix and a petition for the distribution of said estate, in which the court is asked to settle said estate, distribute the property to the heirs or persons entitled to the same . . . the 27th day of March, 1936 . . . at which time . . . any person interested in said estate may appear and file his exceptions in writing thereto and contest the same."

### Decree:

"Now, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED:

"1. That all debts, including the funeral expenses of Homer J. Shinn, deceased, and expenses of administration have been paid.

"2. That the inheritance tax due the State of Washington and the United States Government in respect of

said will and the legacies therein given have been paid.

"3.   That all legacies given by the said will have been paid or released.

"4.   That Phoebe Shinn is entitled to receive, and there is. hereby distributed to her the entire residue of said estate.

"5.   Said estate is hereby declared to be closed and the executrix is hereby discharged from further duties or responsibilities."

In support of their argument, the appellants cite the following cases:   *In re Ostlund's Estate,* 57 Wash. 359, 106 Pac. 1116; *Alaska Banking & Safe Deposit Co. v. Noyes,* 64 Wash. 672, 117 Pac. 492; *Reagh v. Dickey,* 183 Wash. 564, 48 P. (2d) 941; *O'Leary v. Bennett,* 190 Wash. 115, 66 P. (2d) 875; *Golden v. McGill,* 3 Wn. (2d) 708, 102 P. (2d) 219.

The position taken by appellants, however, is not sustained by any of the holdings of the cited cases. In those cases, the right or interest claimed could have been adjudicated in the probate proceeding.   In the instant case, the probate court neither attempted to interpret the provisions of the will pertaining to the mutual obligations of the parties nor to adjudicate respondents' equitable rights under the contract between the Shinns.   The agreement became a fixed obligation, if not upon the execution of the wills, certainly upon Mr. Shinn's death and the election of his widow to take under the provisions of the will.   However, there was nothing for which respondents could seek the aid of the court until and unless it became apparent to them that she intended to violate this obligation.   *Prince v. Prince,* 64 Wash. 552, 117 Pac. 255, *Rogers v. Schlotterback,* 167 Cal. 35, 138 Pac. 728.   This fact was not brought to their attention until the probate of her will.

■ Nor do we consider the distribution to Mrs. Shinn to be anything more than a distribution in accordance with the words and terms of the will and in no way inconsistent to respondents' claims. This is not a construction of the will, *Martin v. Barger*, 62 Wash. 672, 114 Pac. 505, and the failure to mention the restriction of disposition after death did not vest absolute title. *Porter v. Wheeler*, 131 Wash. 482, 230 Pac. 640. In the cited case, the court held that a decree of distribution, which used language similar to that contained in the decree entered in the Homer J. Shinn estate, did not cut off the right of a remainderman.

Under the contract made by the spouses, respondents had every right to assume that Phoebe Shinn would comply with the agreement she made with her husband in 1931 and by her will leave to respondents the interests named in the wills that she and her husband made.

■ Appellants take the position that the contract between Mr. and Mrs. Shinn was void, since it was not drawn in conformity with Rem. Rev. Stat., § 6894 [P. C. § 1440]:

"Nothing contained in any of the provisions of this chapter, or in any law of this state, shall prevent the husband and wife from jointly entering into any agreement concerning the status or disposition of the whole or any portion of the community property, then owned by them or afterward to be acquired, to take effect upon the death of either. But such agreement may be made at any time by the husband and wife by the execution of an instrument in writing . . ."

"This court has definitely held that an agreement to make mutual wills is within the statute of frauds, if real property is involved, or real and personal property. We have also held that the making of mutual wills is not sufficient part performance to take the agreement without the statute of frauds, in the absence

of any other consideration. We have also definitely fixed the quantum of proof required to establish such a contract." *Allen v. Dillard*, 15 Wn. (2d) 35, 129 P. (2d) 813.

The oral contract made by Mr. and Mrs. Shinn was within the provisions of the above statute and, in itself, unenforcible. However, mutual wills were made by the Shinns in conformity with their oral agreement. Thereafter, Mrs. Shinn probated her husband's estate and took his estate given to her by his will executed in 1931. The actions of the parties were sufficient part performance to take the contract from the statute of frauds. *Brown v. Webster*, 90 Neb. 591, 134 N. W. 185, 37 L. R. A. (N. S.) 1196.

Mrs. Shinn entered into a compact with her husband, in consideration of a life estate in his share of the community property and his agreement to leave certain property to her relatives in the event she predeceased him, to give respondents a certain percentage of one-half of the estate remaining in her hands at the time of her death. Upon the death of Mr. Shinn, Mrs. Shinn filed his will for probate and accepted the benefits of a life estate in his one-half interest in the community estate. In so doing, she elected to take under the contract and will, and could not thereafter free herself of her obligation. This conclusion finds support in the following cases: *Prince v. Prince, supra; McCullough v. McCullough, supra; Collins v. Collins,* 152 Wash. 499, 278 Pac. 186; *Tacoma Savings & Loan Ass'n v. Nadham,* 14 Wn. (2d) 576, 128 P. (2d) 982; *Cotton v. Danville,* 301 Mass. 380, 17 N. E. (2d) 209.

We hold that the evidence introduced to support the making of the oral contracts in 1931 was established

by evidence which was conclusive, definite, certain, and beyond all legal controversy.

The judgment is affirmed.

ROBINSON, C. J., BEALS, BLAKE, and JEFFERS, JJ., concur.