ROSE ANN COATES TRUST, ROBERT N. COATES, TRUSTEE, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 5810–68, 5813–68, 5834–68, 5870–68, 5872–68. Filed December 15, 1970.

*Joseph H. Trethewey*, for the petitioners.
*Millard D. Lesch*, for the respondent.

---

[6] See Mintz, "Corporate Separations," 36 Taxes 882, 887 (1958).
[1] Proceedings of the following petitioners are consolidated herewith: Trust Under Will of Sydney N. Coates, Robert N. Coates, Trustee, docket No. 5813–68; Peter M. Coates, docket No. 5834–68; Charles N. Coates, docket No. 5870–68; Pamela L. Coates, docket No. 5871–68; and Cathy A. Coates, docket No. 5872–68.

DAWSON, *Judge:* In these consolidated cases respondent determined the following deficiencies in petitioners' Federal income taxes for the year 1965:

| Petitioner | Docket No. | Deficiency |
|---|---|---|
| Rose Ann Coates Trust, Robert N. Coates, Trustee | 5810–68 | $12,936.62 |
| Trust Under Will of Sydney N. Coates, Robert N. Coates, Trustee | 5813–68 | 5,313.41 |
| Peter M. Coates | 5834–68 | 654.42 |
| Charles N. Coates | 5870–68 | 427.00 |
| Pamela L. Coates | 5871–68 | 427.00 |
| Cathy A. Coates | 5872–68 | 602.87 |

By amendment to his answer, respondent has claimed the following additional deficiencies:

| Petitioner | Docket No. | Deficiency |
|---|---|---|
| Rose Ann Coates Trust, Robert N. Coates, Trustee | 5810–68 | $11,495.89 |
| Trust Under Will of Sydney N. Coates, Robert N. Coates, Trustee | 5813–68 | 4,966.42 |
| Peter M. Coates | 5834–68 | 511.06 |
| Charles N. Coates | 5870–68 | 419.20 |
| Pamela L. Coates | 5871–68 | 419.20 |
| Cathy A. Coates | 5872–68 | 470.03 |

The key issues presented for decision are: (1) Whether the sale by petitioners of all of their stock in Washington Industrial Products, Inc., to CAM Industries, Inc., on May 20, 1965, was a redemption through the use of a related corporation under section 304(a)(1), I.R.C. 1954;[2] (2) whether the redemption of all of the stock in Washington Industrial Products, Inc., by CAM Industries, Inc., was essentially equivalent to a dividend to petitioners under section 302 (b)(1) so that the amounts received by them are taxable as ordinary income; and (3) the fair market value of the contracts received by petitioners from CAM Industries, Inc., on May 20, 1965. There is a preliminary question as to whether the Rose Ann Coates Trust and the Trust Under Will of Sidney N. Coates are proper parties in these proceedings.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts, supplemental stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

Petitioners Peter M. Coates, Charles N. Coates, Pamela L. Coates, and Cathy A. Coates are brothers and sisters who filed their individual income tax returns for 1965 with the district director at Tacoma,

---

[2] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

Wash. They were residents of Bellevue, Wash., at the time they filed their petitions herein.

Petitioner Rose Ann Coates Trust, Robert N. Coates, trustee, is a trust created under the laws of the State of Washington. Robert N. Coates, trustee, caused the trust to file its Federal fiduciary income tax return for 1965 with the district director at Tacoma, Wash. Robert N. Coates, trustee, resided in Bellevue, Wash., at the time the trust filed its petition herein.

Petitioner Trust Under Will of Sydney N. Coates, Robert N. Coates, trustee, is a trust existing under the laws of the State of Washington. Robert N. Coates, trustee, caused the trust to file its Federal fiduciary income tax return for 1965 with the district director at Tacoma, Wash. Robert N. Coates, trustee, resided in Bellevue, Wash., at the time the trust filed its petition herein.

Sydney N. Coates and Rose Ann Coates were husband and wife. Sydney N. Coates died on January 31, 1963. Rose Ann Coates is still living. Robert N. Coates, Ruby Boyd, and Molly Heinen are the children of Sydney N. Coates and Rose Ann Coates.

Robert N. Coates is the husband of Marjorie Coates. Peter Coates, Cathy Coates, Pamela Coates, and Charles N. Coates are their children.

Ruby Boyd is the wife of R. Morgan Boyd. Robert M. Boyd, Jr., and James Boyd are their children.

Molly Heinen is the wife of A. C. Heinen. Barbara Heinen, Gary Heinen, and Richard Heinen are their children.

CAM Industries, Inc. (hereinafter sometimes called CAM), began its existence as the sole proprietorship of Sydney Coates, doing business as the Coates Electric Manufacturing Co. Coates Electric manufactured a line of commercial and industrial electrical equipment, including ovens and water-heating equipment for government and private customers. The company was incorporated on June 1, 1948, and on May 18, 1965, changed its name to CAM Industries, Inc.

At the time of Coates Electric's incorporation in 1948 Sydney Coates received 696 shares of stock and Robert N. Coates, R. Morgan Boyd, Arthur C. Heinen, and Zena M. Gilbert received 1 share each. Subsequently the number of shares issued to Sydney Coates was reduced from 696 to 426 since the original allotment should have been 426 shares.

On May 31, 1960, Coates Electric amended its articles of incorporation as follows:

The capital stock of the corporation shall be 2,500 shares of Class A voting common stock at a par value of $30.00 per share and 7,500 shares of Class B non-voting common stock at a par value of $30.00 per share. Class A and Class B shareholders shall have identical and equal rights to dividends or to any other

incidents arising from the ownership of said stock except that only Class A voting common stock shareholders shall be entitled to vote.

Shareholders were required to surrender their old shares:

For each ten shares delivered to the corporation each shareholder shall receive twenty-five shares of non-voting stocks together with 8⅓ shares of voting common stock.

On October 13, 1960, the shares of Coates Electric were held as follows:

| | Class A | Class B | | Class A | Class B |
|---|---|---|---|---|---|
| Sydney N. Coates | 1,610 | 4,830 | Molly Heinen | 50 | 150 |
| Robert N. Coates | 710 | 2,130 | Treasury shares | 10 | 30 |
| R. Morgan Boyd | 10 | 30 | | | |
| Ruby Boyd | 50 | 150 | Total | 2,450 | 7,350 |
| Arthur C. Heinen | 10 | 30 | | | |

The single share of the original stock issued to Zena M. Gilbert had been purchased from her on August 23, 1960. The shares held by the children of Sydney Coates and their spouses were received by them as gifts from Sydney and Rose Ann Coates. Sydney and Rose Ann Coates made additional gifts of stock on October 13, 1960, January 2, 1961, and January 10, 1962, so that by May 20, 1965, prior to the acquisition by CAM of all the stock of Washington Industrial Products, Inc. (hereinafter sometimes called WIP), the stock of CAM was held as follows:

| | Class A | Class B | | Class A | Class B |
|---|---|---|---|---|---|
| Estate of Sydney Coates | | 664 | James Boyd | | 391 |
| Robert N. Coates | 1,640 | 2,250 | Ruby Boyd | 390 | 372 |
| Peter Coates | | 205 | A. C. Heinen | 10 | 375 |
| Cathy Coates | | 205 | Barbara Heinen | | 340 |
| Pamela Coates | | 205 | Gary Heinen | | 340 |
| Charles N. Coates | | 205 | Molly Heinen | 390 | 325 |
| Marjorie Coates | | 290 | Richard Heinen | | 340 |
| R. Morgan Boyd | 10 | 422 | Treasury shares | 10 | 30 |
| Robert M. Boyd, Jr | | 391 | Total | 2,450 | 7,350 |

WIP was incorporated on August 2, 1951, for the purpose of purchasing the assets of the Western Bakery Supply Co., Inc., which was doing business as the J. A. Campbell Co. The officers of Coates Electric had intended to purchase a large piece of machinery from the Campbell Co. Finding the Campbell Co. in financial difficulty and near default on its government contracts, the officers of Coates Electric organized WIP to take over the assets and the contracts of Campbell. At that time Campbell manufactured ovens for the food industry (dissimilar to Coates Electric ovens) and an industrial oven.

The original incorporators of WIP, Sydney Coates, Robert Coates, Arthur Heinen, and Morgan Boyd, each received 75 shares of stock. Each received a salary from WIP, from which each deducted amounts sufficient to pay off the bank note covering the purchase of the Campbell assets.

On May 20, 1965, prior to the acquisition by CAM of all the stock of WIP, all the stock of WIP and all the stock of CAM were held as follows:

| | Washington Industrial Products | CAM Industries | |
| --- | --- | --- | --- |
| | | Class A voting | Class B nonvoting |
| Estate of Sydney Coates | 75 | | 664 |
| Robert N. Coates | 51 | 1,640 | 2,250 |
| Peter Coates | 6 | | 205 |
| Cathy Coates | 6 | | 205 |
| Pamela Coates | 6 | | 205 |
| Charles N. Coates | 6 | | 205 |
| Marjorie Coates (Mrs. Robt.) | | | 290 |
| R. Morgan Boyd | 63 | 10 | 422 |
| Robert M. Boyd, Jr | 6 | | 391 |
| James Boyd | 6 | | 391 |
| Ruby Boyd (Mrs. R. M.) | | 390 | 372 |
| A. C. Heinen | 57 | 10 | 375 |
| Barbara Heinen | 6 | | 340 |
| Gary Heinen | 6 | | 340 |
| Richard Heinen | 6 | | 340 |
| Molly Heinen (Mrs. A. C.) | | 390 | 325 |
| Total | 300 | 2,440 | 7,320 |

WIP and Coates Electric operated as separate corporate entities until 1965. Robert N. Coates managed Coates Electric, and succeeded his father as president in 1963. WIP was managed initially by the Campbell Co. manager, and then by Arthur Heinen from 1955 until 1965.

In 1951 the premises of WIP and Coates Electric were located a half mile apart. Soon WIP was moved to the Coates Electric plant, but operations remained physically distinct except for the sharing of some heavy equipment. In 1955 Coates Electric required more room, so WIP was relocated 6 miles away.

Under the management of Arthur Heinen, WIP began to compete with Coates Electric, particularly in the industrial oven area. The two corporations also began subcontracting work to one another. Coates Electric sold some products to WIP for resale.

During this period Robert N. Coates was generally familiar with the operations of WIP, and made himself and the resources of Coates Electric available to WIP. He did not preside over day-to-day operations of WIP.

In 1964 and 1965 WIP and Coates Electric discussed combining their businesses. They determined that by combining office personnel,

salesmen, inventories, purchasing, and machinery, they would realize substantial economies.

Before his death, Sydney Coates had transferred most of the stock of CAM from his estate, and, in the process, left his only son, Robert N. Coates, in complete control of CAM. It was the wish of Sydney Coates to give Robert N. Coates control of two-thirds of the voting stock and 51 percent of the total stock of CAM. At his death Sydney Coates had accomplished his purpose.

In combining CAM and WIP, Robert N. Coates insisted that he should have two-thirds voting control and at least 51 percent of the ownership of the resulting entity. The only manner in which this could be accomplished was by having CAM purchase WIP. A merger would have reduced Robert N. Coates' interests below the amounts he insisted upon.

On May 20, 1965, CAM and the shareholders of WIP entered into agreements of the following form:

### AGREEMENT FOR SALE OF STOCK

Agreement made this 20th day of May, 1965, by and between the undersigned "Seller" and CAM INDUSTRIES, INC., a corporation, hereinafter called the "Buyer".

Seller hereby sells to Buyer, and Buyer hereby purchases from Seller, _____ shares of the common stock of Washington Industrial Products, Inc., a Washington corporation, at the price and on the terms and conditions herein set forth.

1. Purchase Price. The price to be paid by Buyer to Seller for said shares of common stock shall be $1,000.00 per share or an aggregate purchase price of _____.

2. Delivery of Stock and Payment of Purchase Price.

(a) The certificate or certificates for the shares of common stock sold hereunder by Seller are herewith delivered to Buyer, duly endorsed for transfer to Buyer, and Buyer hereby acknowledges receipt of said certificate or certificates.

(b) The purchase price shall be paid _____, or more at Buyer's option, on or before May 31, 1966, and a like sum, or more at Buyer's option, on the 31st day of May of each year thereafter until the 31st day of May, 1975, at which time the entire unpaid balance of the purchase price shall be due and payable. Buyer shall pay interest on the diminishing balance of said purchase price at the rate of four percent per annum from the 1st day of June, 1965, which interest shall be deducted from each installment payment and the balance of each payment applied in reduction of principal.

3. Successors and Assigns. The provisions of this agreement shall inure to the benefit of and bind the successors and assigns of Buyer and the executors, administrators, heirs, successors and assigns of Seller.

IN WITNESS WHEREOF, the parties hereto have executed this agreement the day and year first above written.

CAM liquidated WIP on May 31, 1965. On May 30, 1965, the accumulated earnings and profits of CAM were $183,000.

The fair market value of the contracts between CAM and the shareholders of WIP as of May 20, 1965, were $600 per $1,000 face value.

Sydney N. Coates and Rose Ann Coates executed mutual wills. Sydney Coates' will gave the house, automobile, bank accounts, and personal effects to Rose Ann Coates, and the residue of his estate went to the Trust Under Will of Sydney N. Coates. Rose Ann Coates' will provided that, in the event Sydney N. Coates predeceased her, she agreed to convey by separate instrument her interest in any community property "to the Trustee or Trustees as named under the terms of the Trust created by the Will of Sydney N. Coates."

The Trust Under Will of Sydney Coates provided, in part, that:

The Trustee or successor Trustee or Trustees shall pay a sum of not less than $500.00 a month to the said ROSE ANN COATES to keep her and maintain her in the manner to which she is accustomed, and to raise said amount as the Trustee in his discretion may see fit, for any reason whatsoever, such as for sickness or for travel, but not limited thereto, said monthly income to come out of the income of the property in Trust, or from the principal thereof, provided that the said ROSE ANN COATES may, by an instrument in writing, waive said monthly payments or take a lesser sum during business depressions or emergencies.

It further provided:

NINTH: In the event of the death of the said ROSE ANN COATES, then the Trustee or successor Trustee or Trustees is directed to distribute the remaining corpus of the estate as follows:

A. To ROBERT N. COATES, a percentage of the estate interest of the partnership assets of COATES & COATES, equivalent to the percentage needed to give the said ROBERT N. COATES fifty per cent (50%) of said partnership assets.

B. The remainder of the corpus shall be distributed to the children of SYDNEY N. COATES and ROSE ANN COATES, to-wit: ROBERT N. COATES, RUBY N. BOYD and MOLLY M. HEINEN, share and share alike.

By order of the Superior Court of the State of Washington for King County dated September 23, 1965, Robert N. Coates as trustee of the Trust Under Will of Sydney N. Coates received:

4. 332 shares common stock in CAM Industries, Inc.

\*  \*  \*  \*  \*  \*  \*

8. An undivided one-third interest in the contract dated May 20, 1965, for the sale of 75 shares of Washington Industrial Products common stock.

The Rose Ann Coates Trust, established by an agreement dated August 21, 1965, provided:

### ARTICLE II

#### DISTRIBUTION FROM THE TRUST ESTATE

In that certain trust established under the Will of Sydney N. Coates, it is provided that:

"The Trustee or successor Trustee or Trustees shall pay a sum of not less than $500.00 a month to the said ROSE ANN COATES to keep her and maintain her in the manner to which she is accustomed, and to raise said amount as the

Trustee in his discretion may see fit, for any reason whatsoever, such as for sickness or for travel, but not limited thereto, said monthly income to come out of the income of the property in Trust, or from the principal thereof, provided that the said ROSE ANN COATES may, by an instrument in writing, waive said monthly payments or take a lesser sum during business depressions or emergencies;"

To the extent that the payments provided for Rose Ann Coates in the trust established under the Will of Sydney N. Coates are not made as provided therein, payment shall be made from the trust herein established, provided, however, that said payments hereunder shall in no event exceed $250.00 per month.

\*  \*  \*  \*  \*  \*  \*

### ARTICLE V

#### ULTIMATE DISTRIBUTION

Upon the death of Trustor, the Trustee or successor Trustee or Trustees are directed to distribute the remaining corpus of the trust to the children of SYDNEY N. COATES and ROSE ANN COATES, to-wit: ROBERT N. COATES, RUBY N. BOYD and MOLLY M. HEINEN, share and share alike.

On March 25, 1966, Robert N. Coates, as trustee of the Rose Ann Coates Trust, received by order of the Superior Court of the State of Washington for King County:

4. 332 shares common stock in CAM Industries, Inc.

\*  \*  \*  \*  \*  \*  \*

8. An undivided two-thirds interest in the contract dated May 20, 1965, for the sale of 75 shares of Washington Industrial Products common stock.

In his notice of deficiencies the respondent treated the "sale" of the WIP shares as a redemption by a related corporation within the scope of section 304.

On October 24, 1969, the Tax Court of the United States entered decisions of no deficiency in the following listed cases. With respect to the following listed stockholders of Washington Industrial Products, Inc., the respondent determined that the redemption of their stock in Washington Industrial Products, Inc., by Cam Industries, Inc., was substantially disproportionate pursuant to section 302(b)(2), I.R.C. 1954:

| Name | Docket No. |
|---|---|
| Arthur C. Heinen & Molly M. Heinen | 5873–68 |
| Estate of Ruby M. Boyd, deceased, R. Morgan Boyd, executor | 5811–68 |
| R. Morgan Boyd | 5812–68 |
| Robert M. Boyd & Judith K. Boyd | 5842–68 |
| Gary A. Heinen | 5861–68 |
| Richard G. Heinen | 5867–68 |
| Barbara Gaye Heinen | 5868–68 |
| James E. Boyd | 5869–68 |

OPINION

This case arises out of a transaction between the members of a family group and two corporations controlled by them. Sydney and Rose Ann Coates, together with their children, children's spouses, and grandchildren, owned all the shares of two corporations conducting related businesses. After the death of Sydney Coates, the family group agreed to combine the two corporations by having CAM "purchase" the shares of WIP.

Respondent's position is that the transaction was a redemption through the use of a related corporation, within the scope of section 304(a)(1).[3] Under sections 302(d)[4] and 301(a) and (c),[5] respondent would treat the amount of the distribution to the petitioners herein as dividends. Some members of the family group have escaped dividend treatment under section 302(b)(2). The case of Robert N. Coates and Marjorie Coates was not joined herein with these petitioners.

The trial of these related cases took place before the decision of the Supreme Court in *United States* v. *Davis*, 397 U.S. 301 (1970). Much of the proof, therefore, was directed at the issue of whether the trans-

---

[3] SEC. 304. REDEMPTION THROUGH USE OF RELATED CORPORATIONS.

  (a) TREATMENT OF CERTAIN STOCK PURCHASES.—

    (1) ACQUISITION BY RELATED CORPORATION (OTHER THAN SUBSIDIARY).—For purposes of sections 302 and 303, if—

      (A) one or more persons are in control of each of two corporations, and

      (B) in return for property, one of the corporations acquires stock in the other corporation from the person (or persons) so in control,

then (unless paragraph (2) applies) such property shall be treated as a distribution in redemption of the stock of the corporation acquiring such stock. In any such case, the stock so acquired shall be treated as having been transferred by the person from whom acquired, and as having been received by the corporation acquiring it, as a contribution to the capital of such corporation.

[4] SEC. 302. DISTRIBUTIONS IN REDEMPTION OF STOCK.

  (d) REDEMPTIONS TREATED AS DISTRIBUTIONS OF PROPERTY.—Except as otherwise provided in this subchapter, if a corporation redeems its stock (within the meaning of section 317(b)), and if subsection (a) of this section does not apply, such redemption shall be treated as a distribution of property to which section 301 applies.

[5] SEC. 301. DISTRIBUTIONS OF PROPERTY.

  (a) IN GENERAL.—Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c).

     \*      \*      \*      \*      \*      \*      \*

  (c) AMOUNT TAXABLE.—In the case of a distribution to which subsection (a) applies—

    (1) AMOUNT CONSTITUTING DIVIDEND.—That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income.

    (2) AMOUNT APPLIED AGAINST BASIS.—That portion of the distribution which is not a dividend shall be applied against and reduce the adjusted basis of the stock.

    (3) AMOUNT IN EXCESS OF BASIS.—

      (A) IN GENERAL.—Except as provided in subparagraph (B), that portion of the distribution which is not a dividend, to the extent that it exceeds the adjusted basis of the stock, shall be treated as gain from the sale or exchange of property.

      (B) DISTRIBUTIONS OUT OF INCREASE IN VALUE ACCRUED BEFORE MARCH 1, 1913.—That portion of the distribution which is not a dividend, to the extent that it exceeds the adjusted basis of the stock and to the extent that it is out of increase in value accrued before March 1, 1913, shall be exempt from tax.

action between the stockholders and their two corporations had a "business purpose" which might bring it within the scope of section 302(b)(1). Respondent's opening brief is devoted largely to this issue. However, because of several extensions of time for filing their brief, petitioners' opening brief was filed after the *Davis* case was decided. Consequently, the petitioners have shifted their primary position from the "business purpose" issue to another ground, namely, the question of proper parties. Respondent, in turn, was caught off balance in framing his reply. As a result, we are faced with briefs reflecting the turmoil of events. Moreover, both the parties and the Court are handicapped by the vagaries of a record created primarily for an issue which is now of uncertain status.

1. *Proper Parties.*—Petitioners' initial argument is that "the Rose Ann Coates Trust and the Trust Under Will of Sydney Coates did not transfer shares in Washington Industrial Products, Inc., to CAM Industries, Inc., and consequently are not chargeable with a dividend." Petitioners point out that the Rose Ann Coates Trust was created after the agreement to transfer the WIP shares. They argue that the agreement was made by the Estate of Sydney Coates, administering community property, and that the proper taxpayers are Rose Ann Coates and the Estate of Sydney Coates.

In its reply brief, respondent "agrees with petitioners that, if the [75 shares of WIP] stock of Sydney Coates was the community property of Sydney and Rose Ann Coates, then the transaction would be taxable one-half to Rose Ann Coates and one-half to the Estate of Sydney Coates. Rose Ann Coates is not a party to this action." Respondent's position with respect to the Estate of Sydney Coates is that the contract distributed to the testamentary trust would be deductible by the estate, and reported by the trust. However, respondent contends that "The argument that the stock of Syndey Coates was community property was never raised in the pleadings or in petitioners' opening statement."

Paragraph 5 (f) of the petition alleges:

Washington Industrial Products, Inc., is a Washington corporation incorporated on August 2, 1951. As of March 19, 1953, its shares were held by the following families—75 shares each:

  Mr. and Mrs. Robert N. Coates
  Mr. and Mrs. Sydney N. Coates
  Mr. and Mrs. R. Morgan Boyd
  Mr. and Mrs. Arthur C. Heinen

The assets for which said shares were issued were transferred from a pre-existing company, J. A. Campbell Co., which was not related to anyone in either company here. These assets were paid for by funds earned by each of the four males above.

In his answer respondent admitted only that WIP was a Washington corporation incorporated August 2, 1951, and denied the remaining allegations of paragraph 5 (f).

We think the statement that the shares were held by husband and wife ("Mr. and Mrs.") in a community property State, the statement that the assets which bought the shares were paid for with the husband's earnings, together with respondent's denial, clearly place in issue the status of the shares as community property.

The evidence presented indicates that the 75 shares of WIP were held by Sydney and Rose Ann Coates as community property. The correspondence concerning their estate planning shows that virtually all of their property was held as community property. In particular, the WIP shares were paid for from Sydney's earnings. Usually, property "acquired after marriage by either husband or wife or both, is community property" in Washington. Wash. Rev. Code sec. 26.16.030. We note that by their mutual wills it was agreed that Rose Ann Coates would place her share of the community property into the Rose Ann Coates Trust. The contract for sale of the 75 shares of WIP was eventually distributed two-thirds to the Rose Ann Coates Trust and one-third to the Trust Under Will of Sydney N. Coates. The odd apportionment is explained by the Order Approving Final Account, Report and Decree of Distribution of the Superior Court, which provided that in dividing the community property "any disproportionate allocation necessary shall be made in the respective ownership of the contract receivable for the sale of the Washington Industrial Products stock, as hereinafter set forth."

Having determined that the 75 shares of WIP were held as community property, we must examine respondent's position that the transaction is therefore taxable one-half to Rose Ann Coates, who is not a party. This concession in respondent's reply brief would compel us to the conclusion that Rose Ann Coates, and not the Rose Ann Coates Trust is the proper party as to half of the shares.[6] However, it appears to us that this concession is based upon an erroneous interpretation of law. The stipulation of a conclusion of law is not controlling. *Davis* v. *Commissioner*, 241 F.2d 701 (C.A. 7, 1957) ; *Ohio Clover Leaf Dairy Co.*, 8 B.T.A. 1249 (1927), affd. 34 F.2d 1022 (C.A. 6, 1929) ; cf. *Forbes* v. *Commissioner*, 82 F.2d 204 (C.A. 1, 1936). *A fortiori*, we may disregard respondent's concession on this point of law.

In offering his concession, respondent has assumed that if the shares were community property, then Rose Ann Coates owned one half of them at the time of the transaction. But respondent has overlooked the existence of the mutual wills. Rose Ann Coates had agreed that

---

[6] Nevertheless, the trust might be liable as a transferee.

upon Sydney's death she would transfer her half of the community property into trust. In the State of Washington this agreement was specifically enforceable by the beneficiaries of the agreement (who were Rose Ann and her children). *In re Young's Estate*, 40 Wash. 2d 582, 244 P.2d 1165 (1952); *Cummings* v. *Sherman*, 16 Wash. 2d 88, 132 P.2d 998 (1943); *Allen* v. *Dillard*, 15 Wash. 2d 35, 129 P.2d 813 (1942). Therefore, upon Sydney's death and at the time of the transaction, the equitable owner of the 37½ shares was the Rose Ann Coates Trust.

Since the Rose Ann Coates Trust was the owner of 37½ shares at the time of the transaction, it is a proper party to this proceeding. In addition, the Rose Ann Coates Trust reported the income as capital gain on the installment basis on its tax return for 1965.

We also conclude that the Trust Under Will of Sydney N. Coates is a proper party to this proceeding. Although the Estate of Sydney N. Coates sold the shares to produce the income, such income, when distributed, was deductible by the estate and taxable to the beneficiary. See secs. 661 and 662. The Trust Under Will of Sydney N. Coates recognized the pass-through character of the income distribution from the Estate of Syndey Coates and reported such income as capital gain on the installment basis on its tax return for 1965.

2. *Section 351.*—Petitioners contend that the sale of their WIP shares to CAM falls within the scope of section 351 as well as within section 304. Relying on *Commissioner* v. *Stickney*, 399 F.2d 828 (C.A. 6, 1968), affirming sub nom. *Henry McK. Haserot*, 46 T.C. 864 (1966), they argue that section 351 takes precedent over section 304, and that any recognized gain is taxable at capital gains rates.

We agree with respondent that section 351 is inapplicable to this transaction. Section 351 applies where "property is transferred to a corporation * * * by one or more persons solely in exchange for stock or securities in such corporation." Petitioners transferred their shares to a corporation for an agreement to pay an amount of cash plus interest in installments over a 10-year period. Petitioners do not contend that the agreement is a "security," and we think it is not. See *Warren H. Brown*, 27 T.C. 27 (1956). For the same reason, we think that petitioners did not do "exactly what Mr. Haserot did" in *Stickney*. In combining his businesses, Haserot received for his shares a cash credit *plus stock.* Thus, without considering whether section 351 or section 304 takes precedence when both apply, it is plain here that section 351 does not apply.

3. *Section 304.*—Petitioners next contend that section 304 does not apply to this situation. They refer to the language of section 304(a)(1)(A), which requires that "one or more persons are in control

of each of two corporations." They argue that "one or more persons" refers to control by one person plus the attribution persons described in section 318.

This construction by the petitioners is contrary to section 1.304–2(b) and (c), Income Tax Regs., which refers to "two or more persons, in the aggregate" and gives examples of control by unrelated persons. Petitioners cite no authority for their interpretation. We are persuaded that the regulations present the proper construction of the statute. Section 304(c)(2) makes the attribution rules of section 318 expressly applicable for purposes of determining control. That being the case, the reference to "or more persons" in section 304(a)(1)(A) would, by petitioners' interpretation, become entirely superfluous.

Even if petitioners' interpretation of section 304(a)(1)(A) were correct, Rose Ann Coates, or Rose Ann Coates together with persons whose shares are attributable to her, had "control" of shares in excess of the 50 percent of the voting shares of each corporation. The shares of the estate and the shares of her children and grandchildren were all attributable to her. Sec. 318(a)(1)(A)(ii) and (a)(2). It is of no consequence that the shares of the children cannot be attributed to one another. Section 304 requires control by "one or more persons," not control by each and every person.

Accordingly, we hold that the sale of their stock by all the shareholders of WIP to CAM on May 20, 1965, was a redemption through the use of a related corporation under section 304(a)(1).

4. *Dividend Equivalence.*—Petitioners contend that there was a business purpose for the transaction, that the redemption was not pro rata, and that it meets the requirements of section 302(b)(1). To the contrary, respondent argues that the redemption of all the stock in WIP by CAM was essentially equivalent to a dividend to petitioners.

We might agree with the petitioners that there was a business purpose for combining WIP and CAM. Their business endeavors were to some extent overlapping, and could be managed more efficiently as a single enterprise. However, petitioners have presented no business justification for the particular manner by which they achieved this combination. We know that Sydney N. Coates and Robert N. Coates wanted Robert N. Coates to maintain a two-thirds voting interest and a 50-percent ownership in the combined company, but there is no proof that this represented anything more than personal preferences. Had Robert N. Coates not insisted on maintaining personal control, the companies could have been merged without significant tax consequences.

It is not necessary in this case for us "to dissect the differences

between corporate and shareholder business purpose which have so often troubled the courts." *Perry S. Lewis*, 47 T.C. 129, 135 (1966); *Estate of Moses L. Parshelsky*, 34 T.C. 946 (1960), revd. 303 F.2d 14 (C.A. 2, 1962). We are relieved of that burden by the recent decision of the Supreme Court of the United States that " 'the business purpose of a transaction is irrelevant in determining dividend equivalence' under § 302(b) (1)." *United States* v. *Davis*, 397 U.S. 301, 312 (1970). We do not understand petitioners to contend that a nonprorata redemption would by itself preclude dividend equivalence. Clearly section 302 reaches nonprorata redemptions. See sec. 1.302–2(b), Income Tax Regs.; cf. *United States* v. *Davis, supra* at 312.

Accordingly, we conclude that the distribution in redemption of petitioners' stock was essentially equivalent to a dividend.

5. *Fair Market Value of Contracts.*—In return for their stock in WIP, each shareholder received a contract from CAM obligating CAM to pay $1,000 per share of stock. This amount, plus interest of 4 percent on the unpaid balance, was payable in annual installments over 10 years. It is necessary to determine the fair market value of these contracts because under section 301(b) (1) (A) the amount of a distribution other than money is the "fair market value of the other property received." This question of value is factual.

At trial the parties called expert witnesses who offered their various opinions as to the value of the contracts. Their conclusions were:

|  |  | Per $1,000 face value |
|---|---|---|
| Mr. Morforde | (1,000×.875×.65×.50) | $284.38 |
| Mr. O'Farrell | | 847.00 |
| Mr. Kleinberg | large contract—15 percent | 618.80 |
| | small contract—18 percent | 554.10 |

Mr. O'Farrell demonstrated no particular familiarity with the type of contract involved here. Mr. Morforde approached it indirectly through his experience with first mortgages. And as an investment banker he was quite wary of unsecured contracts of this type. Mr. Kleinberg, as president of a discount corporation, impressed us as the witness who was most familiar with this type of contract, having dealt with "similar" unsecured contracts, both large and small. All witnesses agreed that the market for such contracts was limited.

Taking into account the testimony of the witnesses, and the financial information made available to us concerning CAM's ability to pay, we conclude that the fair market value of the contracts was $600 per $1,000 face value.

To reflect the conclusions reached herein,

*Decisions will be entered under Rule 50.*