## APPEAL OF JOHN J. RADEL CO.

Docket No. 5576.     Decided October 29, 1926.

The basis for determining gain or loss on the sale of stock determined from the evidence.

*Cecil L. Hall, Esq.*, for the petitioner.
*L. C. Mitchell, Esq.*, for the Commissioner.

This is an appeal from the determination of a deficiency of $1,146.19 in income and profits taxes for 1921. The deficiency arises on account of the action of the Commissioner in disallowing a deduction of $20,000, claimed by the taxpayer as a loss on the sale of 400 shares of stock of the Queen City Livery Co.

### FINDINGS OF FACT.

The taxpayer is a corporation, organized under the laws of Ohio, with its principal place of business in Cincinnati. It is engaged in the undertaking business. Prior to 1910 it had a livery business in connection with its undertaking business. In 1910 a group of undertakers organized the Queen City Livery Co., which was to do a general livery business principally for the undertakers who were its stockholders. The stockholders of the company consisted of certain undertakers in Cincinnati. Their purpose was to turn over all of their livery equipment to the new company and hire the equipment from that company as they needed it.

The taxpayer acquired a block of 460 shares of stock of the Queen City Livery Co., upon the organization of that company in 1910, in exchange for its horses, carriages, harness and other stock and

equipment, which was appraised, for the purpose of the exchange, at $46,000. The following table sets forth the equipment turned over by the taxpayer for stock, together with the allowance made by the Queen City Livery Co. and the average allowance for each article:

| Article. | Number. | Total allowance. | Average allowance per article. |
|---|---|---|---|
| Hearses | 7 | $15,000.00 | $2,142.85 |
| Carriages, United States | 12 | 11,800.00 | 983.33 |
| Carriages (other makes) | 26 | 12,600.00 | 484.61 |
| Horses | 29 | 5,350.00 | 184.48 |
| Sets harness | 22 | 1,575.00 | 71.59 |
| Livery coats | 27 | 870.00 | 13.70 |
| Coach hats | 17 | 34.00 | 2.00 |
| Blankets | 14 | 115.00 | 8.25 |
| Miscellaneous articles | | 77.00 | |
| | | 45,718.00 | |

In addition to the amount of equipment above set forth, the taxpayer turned over furniture which was valued at $300, and the difference between the appraised value of the furniture and the articles set forth above, that is, $18, was paid to the taxpayer by the livery company in cash.

The carriages turned in by the taxpayer were of the same kind used by hackers generally. The trade allowances for used carriages and equipment in the purchase of new carriages and equipment were $250 to $300 for carriages and $500 to $750 for hearses.

In 1915, the Queen City Livery Co. reduced its authorized capital stock from $400,000 to $200,000, and reduced the par value of its stock from $100 per share to $50 per share.

The taxpayer, at that time being the owner of 460 shares of stock, which it carried on its books at par, that is, at $46,000, on February 28, 1915, when the capitalization was reduced, made an entry on its books of account writing down this investment in stock from $46,000 to $23,000.

In December, 1921, the taxpayer sold 400 shares of the stock of the Queen City Livery Co. for $9,200. In its income-tax return for that year, under Schedule A-23, it reported the sale price of the 400 shares at $9,200, the cost of the 400 shares in 1910 at $40,000, and the fair market value as of March 1, 1913, at $20,000, which figure was taken from the investment account as it then stood on the books of the taxpayer company after the write-down had been made on said books in 1915. The Commissioner allowed a loss on the sale of $10,000, being the difference between the selling price and $20,000, which he determined to be the March 1, 1913 value.

The cost of the 400 shares of stock sold by the taxpayer in 1921 was $21,985.21. The March 1, 1913, value was not less than that amount.

### OPINION.

TRAMMELL: The question to be determined is the amount of the gain or loss, if any, arising from the sale of the 400 shares of stock of the Queen City Livery Co. in 1921.

The loss which is deductible is the difference between the cost or the March 1, 1913, value, whichever is lower, and the selling price.

The cost of the stock which the taxpayer sold is the fair market value of the property which the taxpayer turned over to the Queen City Livery Co. for the stock. The taxpayer claims that the value at which the assets were appraised at the time they were turned over to the livery company was their fair value. The evidence relating to the value of the equipment was given by Paul Huth and John F. Ruehlmann. Huth testified that in 1910 he was connected with the undertaking business of his father in Cincinnati. His father was one of the organizers of the taxpayer corporation. Huth was the secretary and treasurer of the taxpayer corporation. He expressed his opinion that the property was worth the amount at which it was appraised and turned over to the Queen City Livery Co. He testified that, in his opinion, if the property had been placed on the market for sale, it would have brought more than the amount that was subsequently realized in cash from the stock, which was $9,200. The only actual sale of used funeral livery equipment that Huth had knowledge of was a sale made by himself in 1910 of two hearses and six or seven carriages. All these were sold together for $1,900. He and another person together acquired these hearses and carriages for $1,000 and, after repainting and repairing them and advertising them for sale, they received $1,900, making a profit of $900. The trade allowance for used, second-hand funeral equipment was from $250 to $300 for carriages, and from $500 to $750, and in some instances, $1,000, for hearses. The carriages turned over by the taxpayer to the Queen City Livery Co. were the same kind as those used by hackers in 1910.

The witness Ruehlmann testified that he thought that the values placed upon the assets for 1910 were fair valuations, but he does not testify that the valuations placed were in accordance with the fair market value of those assets as determined by the selling price of similar assets. There is no testimony as to how long these particular assets had been in use by the taxpayer when they were turned over to the Queen City Livery Co.

If we accept the valuation of $300 for carriages and $1,000 each for hearses, the total value of the assets turned over to the taxpayer for stock was $25,168. From all the evidence we find that these figures represented the fair market value of the carriages and hearses of the taxpayer exchanged for stock. This represented the cost of the stock.

There were no sales of the stock on the open market in 1913, and in order to determine the value on March 1, 1913, resort must be had to the facts surrounding the condition of the business and the valuation of its assets. From 1910 to 1915 the Queen City Livery Co. had not been as successful as was contemplated at the time of its organization. In 1910, 1912 and 1913, it showed profits, but for 1911 there was a loss, and, taking the four years together, there was a profit of only $150.02. In 1913 the auto equipment was being experimented with by undertakers, although it had not become in general use. This fact had not, on March 1, 1913, materially interfered with the livery business in connection with the undertaking establishments. From all the evidence, we do not believe that the value of the stock on March 1, 1913, was greater than the cost of the stock in 1910, which cost was represented by the value of the assets turned over therefor. The loss to which the taxpayer is entitled is the difference between the cost of the stock and the selling price, the cost being determined in accordance with this opinion.

*Judgment will be entered on 15 days' notice, under Rule 50.*