WALTER B. LASHAR, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 37883. Promulgated July 10, 1936.

*J. Gilmer Korner, Jr., Esq.,* and *David H. Blair, Esq.,* for the
petitioner.

*H. F. Morton, Esq.,* and *Frank M. Thompson, Esq.,* for the
respondent.

OPINION.

SMITH: It is the contention of the respondent relative to the principal issue that, even though several steps were taken in the recapitalization of the American Chain Co., each step was a part of a general plan of reorganization and that the petitioner really exchanged his 100,000 shares of old no par value common stock of that company which had a cost basis of $1,000,000 for 230,000 shares of new no par value common stock of a fair market value of $25 per share and $2,250,000 cash, and that he is taxable under section 202 (e) of the Revenue Act of 1921, as amended by the Act of March 4, 1923, to the extent of the cash received. The petitioner contends that he exchanged his 100,000 shares of old no par common stock for 125,000 shares class A stock and 250,000 shares of new no par common stock pursuant to a reorganization; that as a separate transaction he sold the class A stock and 20,000 shares of new no par common stock to the bankers for $2,250,000; that the cost of the shares sold was in excess of $2,250,000 and that he therefore sustained a deductible loss on the transaction.

The material provisions of section 202 of the Revenue Act of 1921, as amended by the Act of March 4, 1923, are as follows:

BASIS FOR DETERMINING GAIN OR LOSS

SEC. 202. (a) That the basis for ascertaining the gain derived or loss sustained from a sale or other disposition of property, real, personal, or mixed, acquired after February 28, 1913, shall be the cost of such property; except that—

\* \* \* \* \* \* \*

(c) For the purpose of this title, on an exchange of property, real, personal or mixed, for any other such property, no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value; but even if the property received in exchange has a readily realizable market value, no gain or loss shall be recognized—

\* \* \* \* \* \* \*

(2) When in the reorganization of one or more corporations a person receives in place of any stock or securities owned by him, stock or securities in a corporation a party to or resulting from such reorganization. The word "reorganization," as used in this paragraph, includes a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or of substantially all the properties

of another corporation), recapitalization, or mere change in identity, form, or place of organization of a corporation (however effected) ; or.

\* \* \* \* \* \* \*

(d) (1) Where property is exchanged for other property and no gain or loss is recognized under the provisions of subdivision (c), the property received shall, for the purposes of this section, be treated as taking the place of the property exchanged therefor, except as provided in subdivision (e) ;

\* \* \* \* \* \* \*

(e) Where property is exchanged for other property which has no readily realizable market value, together with money or other property which has a readily realizable market value, then the money or the fair market value of the property having such readily realizable market value received in exchange shall be applied against and reduce the basis, provided in this section, of the property exchanged, and if in excess of such basis shall be taxable to the extent of the excess; but when property is exchanged for property specified in paragraphs (1), (2), and (3) of subdivision (c) as received in exchange, together with money or other property of a readily realizable market value other than that specified in such paragraphs, the amount of the gain resulting from such exchange shall be computed in accordance with subdivisions (a) and (b) of this section, but in no such case shall the taxable gain exceed the amount of the money and the fair market value of such other property received in exchange.

Our first question is whether the sale by the petitioner of the 125,000 shares of class A stock and the 20,000 shares of common stock to the bankers for $2,250,000 occurred in the reorganization of the American Chain Co. so that the petitioner's gain is to be computed under section 202 (e) above, or whether such sale was a separate transaction, independent of the reorganization, on which the petitioner's gain or loss is to be computed on the basis of the cost of the shares sold.

The parties are in agreement that there was a statutory reorganization of the American Chain Co., as unquestionably there was under section 202 (c) (2) above, brought about by the recapitalization of that company. The exchange by the petitioner of his old shares for new shares pursuant to this reorganization was a nontaxable exchange.

We agree with the petitioner's contention, however, that the sale by him to the bankers of the portion of the new shares of stock which he thus received was not an essential part of and was not within the reorganization. The reorganization was embodied in the "recapitalization" of the company. This was completed before the sale by the petitioner of any of the stock which he acquired in the reorganization. It is true that the provision for the sale was incorporated in the original agreement made by the petitioner and the bankers, as later amended, but the company itself was not a party to the agreement and the company's reorganization was not conditioned upon it. In his offer to the bankers the petitioner, after setting

out the details of the proposed reorganization, stated "I will *then sell to you* 100,000 shares of said Class A stock received by me and 20,000 shares of said common stock *received by me* for a total price of $2,250,000 * * *. All of said stock to be delivered to you *by me* as aforesaid shall be delivered on April 2, 1923 at the office of Dillon, Reed & Company or as hereinafter provided." (Italics ours.)

The petitioner and the bankers were entirely at liberty after completion of the reorganization to alter or revoke this part of the agreement, and in fact did alter it as to the number of shares which the petitioner should sell.

We have held in a number of cases that not every transaction which takes place as a consequence of a reorganization or which is provided for in an agreement embodying a plan of reorganization is to be treated for tax purposes as a part of a statutory reorganization. It is only those transactions which form an essential part of the reorganization that are to be so treated. See *Daisy M. Ward*, 29 B. T. A. 1251; affd., 79 Fed. (2d) 381; *Ballwood Co.*, 30 B. T. A. 644 (reversed on a question of reorganization on the authority of *Helvering* v. *Watts*, 296 U. S. 387; *Edison Securities Corp.*, 29 B. T. A. 483 (remanded to the Board, 78 Fed. (2d) 85); *Liquidating Co.*, 33 B. T. A. 1173; *Swiss Oil Corporation*, 32 B. T. A. 777.

Under the provisions of section 202 (d) (1) above the 125,000 shares of class A stock and the 250,000 shares of common stock received by the petitioner in the reorganization in exchange for his 100,000 shares of old common stock are to "be treated as taking the place of the property exchanged therefor."

Our question, then, is, What was the cost to the petitioner of the 100,000 shares of old common stock?

In his income tax return for the year involved the petitioner used a cost basis for the 100,000 shares of $1,000,000. The same cost basis was used by the respondent in his determination of the deficiency. The petitioner now contends, however, that the cost basis was much greater than that amount.

The evidence shows that the 100,000 shares no par common stock in question were acquired by the petitioner on July 9, 1920, as the result of a nontaxable reorganization of the American Chain Co. on that date. These were acquired in exchange for all of the common stock of the American Chain Co. then outstanding, viz., 10,000 shares, par value $100 each, all of which was owned by the petitioner. The transaction which took place on July 9, 1920, was simply a split-up of the common shares, ten for one. Since the split-up was admittedly a nontaxable reorganization under the statute, the 100,000 shares of

no par common stock had the same cost basis as the 10,000 shares of $100 par common stock. Our problem, then, is to determine the cost basis to the petitioner of those shares.

This takes us back to December 31, 1915. On that date the petitioner purchased from the Weed Chain Tire Grip Co. 5,000 common shares of the American Chain Co. for $125,000. On the same date he purchased all of the other assets of the Weed Chain Tire Grip Co., at a net price of $1,713,221.98. On the next business day, January 3, 1916, but as of December 31, 1915, he turned over those assets, less $34,964.86, or of a book value of $1,678,257.12 plus $10,000 for the outstanding stock of the Weed Chain Tire Grip Co., plus $811,-742.88 shown on the journal of the Weed Chain Tire Grip Co. as "good will" for $2,500,000 par value of stock of the American Chain Co. divided into 5,000 common shares and 20,000 preferred shares, each of a par value of $100.

On brief, the petitioner admits that previous to the transaction here involved he recovered $2,000,000 of the cost basis through the sale of 20,000 shares of preferred stock of the American Chain Co.

The petitioner first contends that the cost to him of 5,000 shares of the American Chain Co. common stock purchased by him from the Weed Chain Tire Grip Co. on December 31, 1915, was not $125,000 as shown by the books of the Weed Chain Tire Grip Co. but was $777,901.38, representing the par value of the 5,000 shares plus $277,901.38 surplus shown by the books of the American Chain Co. He next contends that the cost to him of the 5,000 additional shares of common stock and the 20,000 shares of preferred stock received by him from the American Chain Co. for the assets paid in by him on January 3, 1916, was much greater than $2,500,000. He contends that the earnings of the Weed Chain Tire Grip Co. for the years 1913, 1914, and 1915 establish a very large value for the assets and that the value of the Weed patent paid in amounted to several million dollars. This claim is predicated in large part upon the testimony of Hiram Percy Maxim, who testified that in his opinion the value of the Weed patent at the beginning of 1916 plus the value of the license rights which inhered in the Parsons license was at least $5,000,000.

Although there are cases which hold that under the Revenue Acts of 1913, 1916, and 1917 the cost of shares of stock is equal to the fair market value of assets paid in to a corporation in exchange for the shares, *John J. Radel Co.*, 5 B. T. A. 250; *Reliance Investment Co.*, 22 B. T. A. 1287; *Volker* v. *United States* (D. C.), 40 Fed. (2d) 697; *Law* v. *McLaughlin* (D. C.), 2 Fed. Supp. 601, we are of the opinion that those cases are not applicable to the facts here present.

The evidence is clear that the only amount paid by the petitioner to the Weed Chain Tire Grip Co. for 5,000 shares of common stock of the American Chain Co. on December 31, 1915, was $125,000. The evidence is equally clear that the petitioner paid only $1,713,-221.98 for the remaining net assets of the Weed Chain Tire Grip Co., on December 31, 1915, which included all of the other assets of the Weed Chain Tire Grip Co. except $10,000 cash retained for the purpose of meeting contingent income tax liabilities. These same assets of the net amount of $1,678,257.12 plus $10,000 for the stock of the Weed Chain Tire Grip Co. and $811,742.88 for good will plus the Weed patent individually owned by the petitioner from 1910 or 1911 were transferred by the petitioner to the American Chain Co. for the remaining 5,000 shares of common stock and 20,000 shares of preferred stock of that company. The record contains no evidence as to the cost to the petitioner of the Weed patent acquired in 1910 or 1911 or as to its value on March 1, 1913. Apparently the Weed Chain Tire Grip Co. had an exclusive license to manufacture under this patent during its life. The license rights under the Weed patent and under the Parsons patent were obtained by the petitioner from the Weed Chain Tire Grip Co. on December 31, 1915, along with other assets for which the petitioner paid, as above stated, a net amount not exceeding $1,713,221.98.

The petitioner's income tax return for the taxable year involved and the respondent's determination of the deficiency are both based upon the premise that the cost of the petitioner's shareholdings in the American Chain Co. during 1916 and thereafter was $3,000,000; that the petitioner recovered $2,000,000 of that cost upon his sale of the preferred shares prior to 1920; and that the cost basis of the remaining 10,000 shares, exchanged in 1920 for the 100,000 shares of no par common stock and in 1923 exchanged for 125,000 shares of Class A stock and 250,000 shares of no par value common stock, was $1,000,000. We are of the opinion that the evidence does not warrant a greater cost basis.

In point of fact it may be noted that $811,742.88 shown as good will on the American Chain Co.'s voucher record under date of January 4, 1916, is shown in the ledger of the American Chain Co. as the cost to that company of patents which included the Weed patent. So far as the record shows, the only value which the Weed patent had to the petitioner during the years 1913, 1914, and 1915 was the right to receive royalties from the Weed Chain Tire Grip Co. The evidence does not show that the fair market value of this right on January 3, 1916, was in excess of $811,742.88.

The next problem is to determine the portion of the cost basis of $1,000,000 allocable to the 125,000 class A shares and 20,000 no

par value common shares sold by the petitioner to the bankers in 1923 for $2,250,000 cash. The petitioner suggests that a proper allocation of the cost basis to those shares can be made upon the basis of their fair market value when received by the petitioner. We accept that suggestion. Cf. *Clifford Hemphill*, 25 B. T. A. 1351; *Theodore W. Case et al., Trustees*, 26 B. T. A. 1044; *Frances Elliott Clark*, 28 B. T. A. 1225. In *Clifford Hemphill, supra*, we ascertained the fair market value of the shares of each class of stock to be $25.50 per share for the class A stock and $5 per share for the common stock. Upon the evidence of record in this case we make the same determination.

Upon the basis of such allocation the gain or loss realized by the petitioner upon the sale of the 125,000 shares of class A and 20,000 shares of no par common stock for $2,250,000 is computed as follows:

*Formula based upon cost of $1,000,000*

| Class of stock | Shares received | Market value per share | Market value | Allocation percentage | Allocation of cost |
|---|---|---|---|---|---|
| Class A | 125,000 | $25.50 | $3,187,500 | 71.83% | $718,300 |
| Common | 250,000 | 5.00 | 1,250,000 | 28.17% | 281,700 |
| Total | | | 4,437,500 | 100.00% | 1,000,000 |

Cost per share of common stock, $281,700 divided by 250,000 ___ $1.1268

Realized on sale of 125,000 class A and 20,000 shares common of
  American Chain Co ___ $2,250,000.00
Cost:
    125,000 shares class A (as above) ___ $718,300.00
    20,000 shares common at $1.1268 ___ 22,536.00
    Transfer stamps, attorney's fees and accounting
      fees ___ 8,989.42     749,825.42

    Capital gain ___ 1,500,174.58

The only other question which is before us in this proceeding is whether a loss of $441,251.98 sustained by the petitioner as a result of the liquidation of E. F. von Wettberg, Inc., was a capital net loss as the petitioner contends, or an ordinary loss as determined by the respondent.

The evidence is to the effect that the petitioner advanced various sums of moneys on open account to von Wettberg beginning in 1913. These advances continued into the year 1923 and amounted to a net aggregate of $441,339.48. It is the petitioner's contention that all of the amounts represented capital investments in E. F. von Wettberg, Inc.

We are of the opinion that the evidence does not support the petitioner's contentions. The money was first advanced to von Wettberg and upon the organization of the corporation the shares of stock were issued to von Wettberg. The petitioner testified that these were endorsed in blank by von Wettberg and qualifying stockholders and turned over to the petitioner as "collateral." Granted that the petitioner had an investment in the shares of stock of the corporation, it is clear from the evidence that the shares of stock were utterly worthless long prior to 1923. Amounts advanced to the von Wettberg enterprise subsequent to the issuance of the shares of stock were advanced on open account. It certainly was clear to the petitioner long prior to 1923 that only a small portion, if any, of these advances would be repaid. The petitioner made the advances for the purpose of meeting operating deficits and for paying all claims against E. F. von Wettberg, Inc. The advances did not represent capital assets within the contemplation of the taxing statute. The disallowance of the claimed loss of $441,251.98 as a capital loss is approved.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

MURDOCK, dissenting: I think the reasoning of the prevailing opinion upon the first point is unsound in that it fails to consider the correct method of determining the basis to which the petitioner is entitled. The petitioner acquired 5,000 shares of $100 par common of the American Chain Co. for $125,000 by purchase on December 31, 1915. He acquired another 5,000 shares of the same stock, together with 20,000 shares of preferred, on January 3, 1916, by transferring certain property to the American Chain Co. in exchange for the shares. The cost and basis for these shares was the fair market value of the property exchanged for them. That cost should be allocated between the common and preferred in proportion to the total fair market value of each received. The part allocated to the preferred is not used further in the present computation. The part allocated to the common, together with $125,000, the cost of the first 5,000 shares, forms the total basis of the 100,000 no par shares which the petitioner exchanged in 1923. It may be that the record does not show all of the values necessary to this computation. In that event the result reached in the prevailing opinion may be proper, because the Commissioner seems to concede that the basis of the 100,000 shares should be at least $1,000,000.

MELLOTT agrees with this dissent.